NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUZ GARCIA,<br><br>      Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No.: 13-cv-5418 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

## I. INTRODUCTION

Luz Garcia ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed in part, vacated in part and the matter is remanded for further proceedings consistent with this Opinion.

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI," collectively "Benefits") under Title XVI from the Social Security Administration ("SSA") on November 12, 2006. (R. 18). Plaintiff alleged disability beginning on January 8, 2002 (R. 18). That date was subsequently amended to October 29, 2003. (R. 18). Plaintiff claimed that a severe psychiatric condition limited her ability to work. (R. 74). Plaintiff's claim was denied on August 20, 2008. (R. 18). Plaintiff filed a written request for a hearing before an ALJ on October 20, 2008. (R. 18).

ALJ Marissa Ann Pizzuto held a hearing in this matter on January 29, 2010. (R. 18). On June 18, 2010, the ALJ determined Plaintiff was not disabled. (R. 26). On April 4, 2012, the Appeals Council remanded to resolve inconsistencies in the ALJ decision. (R. 435). On remand, the ALJ again determined Plaintiff was not disabled on January 9, 2013. (R. 417). On July 18, 2013, the Appeals Council declined to review ALJ Pizzuto's second decision. (R. 4). Thereafter, Plaintiff timely filed the instant action on September 11, 2013. (Complaint of Luz Garcia, filed Sept. 11, 2013, ECF No. 1).

### B. Personal and Employment Background

Plaintiff has a twelfth grade education and is literate in English. (R. 568). She cares for her two children, now eight and eighteen. (R. 361). Plaintiff began working in unskilled and semi-skilled jobs in 1994. (R. 490). Between 1994 and October 2003, the alleged onset date of Plaintiff's disability (R. 357), Plaintiff held positions with fifteen different employers. (R. 490-492). Her job titles included "Assembly Line Worker," Assembly Worker," "Medical Assistant," "Sales Clerk" and "Salesperson." (R. 93). Thereafter, Plaintiff was employed sporadically in 2005

2

(R. 492) and 2012 (R. 496). Plaintiff was terminated from a majority of the aforementioned positions for conflict with customers, fellow employees and management. (R. 374; 375; 376).

Plaintiff's most recent employment was in the fast food industry in 2012. (R. 539). Plaintiff testified on November 13, 2012 that her employment lasted approximately two months, during which time she worked three days a week for six to seven hours per day. (R. 541). Plaintiff's employment was terminated following several arguments with management, an inability to remember information relevant to her job performance and the loss of her uniform. (R. 541-542).

A vocational expert (the "VE") also testified on November 13, 2012. (R. 568). In response to a hypothetical posed by the ALJ, the VE testified that a person with the Plaintiff's characteristics in 2003 (25 years old, literate in English, with a twelfth grade education and semi-skilled work experience, yet unable to perform more than simple one- or two-step tasks) "would be able to perform a whole range of different jobs . . . ." (R. 568-569). The jobs included a hand packager, cafeteria attendant and laundry worker. (R. 569-570).

### C.   Mental Health Background

Plaintiff has been a mental health outpatient at Trinitas Hospital since 2003. (R. 188). There, Plaintiff has received individual and group therapy with psychiatrists and/or therapists for depression and anger management. (R. 359; 369; 380). Over the last decade, the frequency of her sessions has varied from once per month to several times per week. (R. 249-250; 309; 516). Plaintiff describes her depressive symptoms as "okay" on some days, while she feels overwhelmed, "like crying" and "like [her] life is out of control[,]" on others. (R. 562).

Plaintiff was first admitted to Trinitas Hospital in September of 2003. (R. 188). Plaintiff presented at the Trinitas Emergency Room complaining of heart palpitations, dizziness and

numbness of the extremities accompanying a feeling of anxiety. (R. 188-189). Plaintiff was examined and determined not to have cardiovascular or psychiatric abnormalities. (R. 189). Plaintiff was diagnosed with anxiety and sent home the same day with a prescription for Hydroxyzine, an anti-anxiety medication. (R. 190; 192).

On October 29, 2003, Plaintiff returned to the hospital for a mental health "intake assessment" for outpatient psychiatric treatment at the Trinitas Hospital Department of Behavioral Health and Psychiatry.[2] (R. 323). Plaintiff's chief complaint was that she was "getting angry much faster . . . [and] getting in verbal confrontations." (R. 323). The intake assessment reports that Plaintiff appeared depressed. (R. 324; 329). The intake assessment diagnosed Plaintiff with "296.21 Major Depressive Disorder, Single Episode, Mild" and a GAF between 65 and 70. (R. 332). The intake form concludes that Plaintiff met admission criteria for psychiatric treatment on an outpatient basis. (R. 332).

Plaintiff returned to Trinitas Hospital on November 3, 2003 and met with a social worker. (R. 337). Thereafter, Plaintiff met with a variety of social workers, therapists, psychologists and doctors through at least 2012. (R. 249-250; 309; 516). Records from Trinitas Hospital, dated between 2004 and 2010, indicate that Plaintiff was prescribed a variety of medications for depression during that period, including Wellbutrin XL, Lexapro, Effexor XL, Paxil CR and Peroxetine. (R. 245; 247; 310-311; 519; 522-523).

Plaintiff attended approximately 70% of her 158 scheduled treatment appointments at Trinitas Hospital. (R. 249-250; 309; 516). Plaintiff testified that her absences were due to an inability to remember the scheduled times or because she did not "feel like coming out of the

---

[2] Plaintiff alleges this to be the onset date of her disability. (R. 18).

house." (R. 359). Hospital records indicate that Plaintiff was also absent due to a lack of transportation and conflicting responsibilities during appointment times. (R. 249-250; 309; 516).

### III. LEGAL STANDARDS

#### A. Standard Of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

#### B. Determining Disability

Pursuant to the Social Security Act, to receive DIB, a claimant must satisfy the insured

5

status requirements of 42 U.S.C. § 423(c). In order to be eligible for Benefits, a claimant must show that she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the claimant has an impairment that limits her ability to work. Id. Third, if she has such an impairment, the ALJ considers the medical evidence

to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. Id. Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n. 2.

## IV.   DISCUSSION

### A.   The ALJ's Decision Is Supported By Substantial Evidence

#### 1.   Step One

After reviewing all of the evidence in the record, the ALJ denied Plaintiff's claim for Benefits. (R. 417). The ALJ arrived at this determination by following the required five-step analysis. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 29, 2003, the alleged onset date. (R. 410). The Record indicates that Plaintiff has earned only $1,722.40 since 2003. (R. 498). In addition, each period of employment during that period lasted less than one year. (R. 492; 496). This work does not rise to the level of substantial gainful activity. Sykes, 228 F.3d at 262. Thus, the ALJ's step one finding is supported by substantial evidence.

### 2. Step Two

At step two, the ALJ must determine whether Plaintiff's impairment is "severe." An impairment or combination of impairments is "not severe if it does not significantly limit [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. However, "[i]f the evidence presented by the claimant presents more than a slight abnormality, the step-two requirement of severe is met, and the sequential evaluation process should continue." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (internal citation omitted). The ALJ found that Plaintiff had the following severe impairment: major depressive disorder. (R. 411). The Record documents medically diagnosed depression, symptoms in accordance with that diagnosis and subsequent psychiatric treatment over more than a decade. (R. 411). Thus, the ALJ's determination is supported by substantial evidence.

### 3. Step Three

At step three, the ALJ determined that the Plaintiff's major depressive disorder did not meet or medically equal the requirements of any disability contained in the Listings. (R. 411). To deny a claim at step three, the ALJ must specify which listings apply and give reasons and analysis for why those listings are not met or equaled. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). "Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion . . . ." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) (citing Burnett, 220 F.3d at 120). The purpose of this requirement is to provide sufficient explanation of findings to permit "meaningful review" on appeal. See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (citing Burnett, 220 F.3d at 120); see also Cotter v. Harris, 642 F.2d 700, 704-705 (3d Cir. 1981)).

The ALJ determined that Plaintiff does not meet the "paragraph B" criteria because she is only mildly restricted in daily living and social functioning, has "at most, moderate difficulties" with concentration, persistence or pace, and has had no repeated or extended episodes of decompensation. (R. 411). The ALJ also determined that Plaintiff does not meet the "paragraph C" criteria because of Plaintiff's independent living situation, ability to care for her two children and absence of hospitalizations for her impairment. (R. 411). According to the decision, these findings were "based upon the mental status examination findings, the range of activities of daily living that the claimant [] performed and the other pertinent factors set forth below." (R. 411).

The Plaintiff challenges the ALJ's determination as not supported by substantial evidence. (Plaintiff's Brief 13, filed May 8, 2014, ECF No. 15). Specifically, Plaintiff argues that the ALJ failed to identify evidence and analysis in support of her conclusions. (Plaintiff's Brief 13-18, ECF No. 15). Further, the Plaintiff contends that the ALJ failed to "employ the protocol, attitude and mandated specificity with regard to plaintiff's abilities at 'concentration', as independent of 'persistence', as independent of 'pace'" as called for by the Appeals Council.[3] (Plaintiff's Brief 13-14, ECF No. 15). Finally, the Plaintiff notes that the ALJ failed to adhere to the Appeals Council Order directing the ALJ to rectify the inconsistency between finding that Plaintiff's impairment is 'severe with moderate limitations' and observing that Plaintiff's depression has never been more than "mild." (R. 434).

The ALJ failed to adequately support her step three conclusion that Plaintiff does not meet

---

[3] In the Appeals Council remand order, the ALJ was specifically directed to "provid[e] specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). For example, if claimant has deficiency of concentration, but not persistence or pace, then this should be specified and supported." (R. 434).

9

the "paragraph B" criteria. The step three analysis consists of generalizations in support of the conclusion: e.g. "the claimant has, at most, moderate difficulties based upon the mental status examination findings . . . ." (R. 411). In addition, throughout the ALJ's step three analysis, no facts from the Record are cited to support the conclusion that Plaintiff has "at most, moderate difficulties" with concentration, persistence or pace. (R. 411). Rather, the decision directs the reader to the RFC section for "other pertinent factors"; (R. 411), yet that section contains only recitations of the Record without analysis addressed to the determination of paragraph B. (R. 412-415). The analysis is thus "[in]sufficient to enable meaningful judicial review." Burnett, 220 F.3d at 120.[4]

Therefore, in accordance with the above, the Step Three determination must be vacated and remanded "for a discussion of the evidence and an explanation of reasoning supporting a determination that [the Plaintiff's] "severe" impairment does not meet or is not equivalent to a listed impairment." Burnett, 220 F.3d 112 at 120. The ALJ will specify her findings with regard to the individual paragraph B criteria, the underlying facts from the record, and the analysis leading to those findings.

### 4. The ALJ's RFC Determination

Before step four, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the non-exertional limitation of being capable of only unskilled work. (R. 412). The ALJ specifically noted that Plaintiff "retains the ability to

---

[4] The Court also notes that the inconsistency observed by the Appeals Council "with respect to the severity of claimant's depression" appears to remain in the ALJ's second decision. (R. 435).

understand, carry out and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in routine work setting." (R. 412). In making this finding, the ALJ considered Plaintiff's symptoms and the extent to which these symptoms can be accepted as consistent with the objective medical evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, as well as SSRs 96-4p and 96-7p. (R. 412-415).

When considering a claimant's symptoms, an ALJ must engage in a two-step process. First, the ALJ must determine whether the claimant suffers from an underlying "medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms . . . ." 20 C.F.R. §§ 404.1529(b), 416.929(b). Second, the ALJ must "evaluat[e] the intensity and persistence of [the claimant's] symptoms . . . and determin[e] the extent to which [those] symptoms limit [claimant's] capacity for work. Id. §§ 404.1529(c) and 416.929(c).

Here, the ALJ's opinion properly followed this two-step process. (R. 412-415). The ALJ found that the Plaintiff's medically determinable impairment could be expected to produce Plaintiff's alleged symptoms. (R. 414). In the second step, however, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were "not entirely credible." (R. 414).

Plaintiff challenges the RFC determination as unsupported by substantial evidence, arguing that the ALJ failed to consider Plaintiff's past relevant work when coming to her RFC determination. However, the Commissioner's Regulations do not require the ALJ to consider the

11

actual vocational skills of the claimant until Steps Four and Five.[5] 20 C.F.R. § 404.1560(c)(1); see also 20 C.F.R. §§ 404.1520(g), 404.1545(a)(5)(ii), 416.920(g), 416.945(a)(5)(ii), 416.960(c)(1). Thus, the ALJ's RFC determination need not have considered that Plaintiff was "unskilled" prior to the onset of her impairment. Nonetheless, the ALJ's RFC finding may require reconsideration in light of new Step Three analysis on remand.

### 5. Step Four

At step four, the ALJ concluded that Plaintiff has no past relevant work. (R. 415). The finding was supported by Plaintiff's employment history, consisting of numerous, yet brief stints in unskilled and low skill-level positions, wherein Plaintiff's earnings never exceeded $4,500 per annum. (R. 73; 490-492). Although Plaintiff has been employed in skilled positions in the past, her periods of employment have been so brief as to not provide time for Plaintiff to attain any relevant skills. (R. 93; 490-492; 496). Thus the ALJ's determination was supported by substantial evidence.

### 6. Step Five

At step five, the ALJ found that jobs exist in the national economy that Plaintiff can perform. (R. 416). The ALJ's conclusion was supported by the hearing testimony of a VE in response to a hypothetical posed by the ALJ.

If an ALJ poses a hypothetical to a VE that "fairly set[s] forth every credible limitation [of

---

[5] "In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d)." Burnett, 220 F.3d at 118.

the claimant] established by the physical evidence," the VE's testimony as to the jobs such a person could perform is by itself substantial evidence to carry the government's burden at step five. Plummer v. Apfel, 186 F.3d 422, 431-32 (3d Cir. 1999). The hypothetical need not incorporate any alleged limitations that the ALJ has already rejected as inconsistent with the objective medical evidence as a whole. Id. at 431.

The ALJ posed the following hypothetical to the VE:

> [A] hypothetical individual who is [25] . . . at onset; who has past relevant work that's semi-skilled and who has a twelfth grade education and is literate in English[ a]nd who has no exertional limitations, in other words is able to perform a full range of work at all exertional limitations [sic], but is limited to only unskilled work. And the ability to carry out, understand, and remember only simple one to two step instructions.

(R. 568-569). In response, the VE testified that a person with those same limitations would be able to perform "a whole range of different jobs" that exist in the local and national economies. (R. 569). The VE provided three examples: 'laundry worker II,' 'hand packager,' and 'cafeteria attendant.' (R. 569-570). The former two are classified as 'unskilled, medium,' while the latter is 'unskilled, light.' (R. 569-570). Plaintiff challenges the VE's determination, alleging that the ALJ failed to construct a hypothetical that reasonably conveyed the extent of plaintiff's limitations. (Plaintiff's Brief 32, ECF No. 15).

"[A] hypothetical question must reflect all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)). Thus, the "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 206 (3d Cir. 2008).

13

Here, the ALJ found in step three that Plaintiff had "at most, moderate difficulties" with concentration, persistence, and pace due to her impairment – major depressive disorder. (R. 411). In other words, at some point while suffering with her impairment, the Plaintiff's difficulties in properly performing her duties of employment may have been, or may be in the future, moderate. This is significant.

In *Ramirez v. Barnhart*, the Third Circuit observed: "Many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." 372 F.3d 546, 554 (3d Cir. 2004). The VE echoed the Third Circuit's observation, testifying on examination that difficulty with pace, persistence and concentration has a negative effect on job performance. Specifically, the VE testified that persons employed in the enumerated vocations "will not be able to maintain [those] job[s]" if they must take non-scheduled breaks over ten minutes in length or cannot keep up with the pace level. (R. 573-574).

Nevertheless, the hypothetical question posed to the VE by the ALJ contained no limitations with respect to concentration, persistence, or pace, other than a restriction to one- or two-step duties. (R. 568-570). Accordingly, because the ALJ failed to include all of her factual findings in the hypothetical posed to the VE, the ALJ's Step Five determination is not supported by substantial evidence. See Ramirez, 372 F.3d at 554 (a hypothetical restricting a person to "one to two step tasks" is insufficient where the plaintiff has been determined to have moderate deficiencies in concentration, persistence, or pace) (relying on Burns, 312 F.3d at 123 ("Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.")); see also Boyle v. Colvin, No. 12-4724 FLW, 2014 WL 3556507, at *10 (D.N.J. July

14

18, 2014); <u>Williams v. Comm'r of Soc. Sec</u>, No. CIV A 07-3234(SRC), 2008 WL 5075549, at *11 (D.N.J. Nov. 25, 2008). Therefore, the decision must be vacated, and this matter remanded for further consideration. <u>Ramirez</u>, 372 F.3d at 554.

## V. **CONCLUSION**

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby AFFIRMED in part, VACATED in part and this matter is REMANDED for further proceedings not inconsistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: December 10, 2014

**CLAIRE C. CECCHI, U.S.D.J.**